GARY M. RESTAINO
United States Attorney
District of Arizona
MICHAEL A. AMBRI
Assistant U.S. Attorney
State Bar No. 021653
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7449
Email: michael.ambri@usdoj.gov
Attorneys for Defendant United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| E.S.M., on his own behalf and on behalf of his minor child, H.S.S., | CV-21-00029-TUS-JAS |
|---|---|
| Plaintiff, | **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| vs. | |
| United States of America, | **(Oral Argument Requested)** |
| Defendant. | |

Defendant United States of America respectfully moves for dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For several reasons discussed below, Congress has not waived sovereign immunity for the types of claims Plaintiffs assert in this action. The claims are therefore jurisdictionally barred.

## I.    OVERVIEW.

In May 2018, ESM unlawfully entered the United States with his minor child, HSS. ESM was detained, separated from his child, and prosecuted for his unlawfully entry. After it was determined that plaintiffs had a credible fear of persecution in Guatemala, they were reunited and released into the United States two months after they arrived. This is an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.,* seeking monetary damages for alleged injuries caused by (1) Defendant's implementation of a policy to refer adult noncitizens for prosecution, and subsequent detention, for illegal entry at the United States-Mexico border ("Zero-Tolerance Policy") and (2) the conditions of confinement and

treatment of Plaintiffs after they were separated. Plaintiffs assert three causes of action under Arizona law for intentional infliction of emotional distress, negligence, and loss of consortium. *See* Complaint, ECF No. 1, ¶¶ 165-190.

The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and has "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy. *Establishment of Interagency Task Force on the Reunification of Families*, Exec. Order 14011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021). And this Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law."

The Court should not, however, reach the merits of Plaintiffs' FTCA claims. Plaintiffs' alleged injuries are not compensable as torts under the FTCA because Congress has not waived the federal government's sovereign immunity from claims for money damages in these circumstances. And although the United States recognizes that district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy — including in this District — have to date reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, the United States respectfully submits that on the better reading of the law, Congress has not waived sovereign immunity and Plaintiffs may not recover under the FTCA.

## II.     FACTUAL AND LEGAL BACKGROUND.

### A.     Statutory Framework for Noncitizens Entering the Country.[1]

Under Section 1325 of Title 8 of the U.S. Code, when a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). Section 1325(a) is a misdemeanor punishable by a fine and 'imprison[ment] not more than 6 months" for a first infraction. *Id*.

All noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). Individuals arriving in or present in the United States who following inspection are deemed inadmissible also are subject to removal from the United States and, as appropriate, detention pending such removal. *See id*. § 1225(b); 1226; 1357. These provisions apply to both adults and children. In some cases, the Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from custody. *See, e.g*., 8 U.S.C. §§ 1182(d)(5), 1226(a)(2).

**B.    Statutory Framework for Immigration Custody Relating to Unaccompanied Minors.**

Federal immigration law authorizes the United States to provide for the custody and care of minor children who are present in the United States without lawful immigration status. Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom … there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency … shall transfer the custody of such child to [ORR] not later than 72 hours after determining that

such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B). Rather, once in ORR custody, there are detailed statutory and regulatory provisions that must be followed before the child is released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied alien child may not be placed with a person … unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that "[s]uch determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is required. *Id.* § 1232(c)(3)(B).

### C.    Flores Agreement Requirements.

In 1996, the federal government entered into a settlement agreement referred to as the "Flores Agreement." *See, e.g., Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9). Under a binding interpretation of the Ninth Circuit, the Flores Agreement "unambiguously" applies both to unaccompanied minors and to minors who are encountered together with their parents or legal guardians. *Id.* at 901. Under the Flores Agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id.* at 902-03 (quoting Flores Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part toward … release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agt. ¶ 14).

Notably, the Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It "does not address … the housing of family units and the scope of parental rights for adults

apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").  Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007).  Though the Flores Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

### D.    Executive Branch Directives Regarding Immigration Enforcement.

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws.  Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017) ("EO 13767").  First, in January 2017, the then-President issued EO 13767 stating that "[i]t is the policy of the executive branch to … detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id*. § 2(b).  Executive Order 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law" (*id*. § 6) and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute … and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole" (*id*. § 11(d)).

Second, on April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325.  *See* U.S. DOJ Memorandum on Renewed Commitment to

Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

Third, on April 6, 2018, the then-Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id*. Consistent with EO 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling with children – who unlawfully entered the United States on the Southwest border in violation of Section 1325. *See generally* Executive Order 13767. Minor children of those adults were transferred to ORR custody, as required by the TVPRA.

### E. Prosecution of Plaintiff ESM.

According to the Complaint, Plaintiffs are a father and son from Guatemala who illegally crossed the United States-Mexico Border on May 19, 2018. Compl. ¶¶ 68-69, 87; *see also* Exhibit A, at ¶ 3, & Atts. 1 and 2 thereto. Shortly after crossing, they were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol agents and transported to the Ajo Border Patrol Station in Ajo, Arizona. Compl. ¶ 69; Ex. A ¶ 3. The father, ESM, was charged and convicted of violating of 8 U.S.C. § 1325. *Id*. ¶ 87. Following his conviction and sentence for time served, *see United States v. ESM*, No. 4:18-po-27177 (D. Ariz.), Dkt.1 ("the defendant is hereby committed to the custody of the United States Bureau of Prisons for a term of TIME SERVED"), ESM was transferred to ICE custody and held in secure adult detention facilities pending immigration proceedings, including an interview and determination on his claim of credible fear. *Id*. ¶¶ 24, 96, 101-102, 106; Exhibit B ¶¶ 4-8.. Because ESM was no longer available to provide care and physical custody for his son, HSS, while he was referred for prosecution and later held in

immigration custody, HSS was designated a UAC for transfer to ORR custody, as required by the TVPRA, and was placed in a care facility in Mesa, Arizona. Compl. ¶¶ 24, 88. Thereafter, ESM was sent to Port Isabel Detention Center in Texas for out-processing and reunification with HSS. *Id.* ¶¶ 101, 106; Ex. B ¶ 8. ESM and HSS were then reunited on July 20, 2018, and released into the United States. Compl. ¶¶ 116-20; Ex. B ¶ 8.

### F. Plaintiffs' Complaint.

Plaintiffs bring this action against the United States under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages relating to intentional infliction of emotional distress (Count 1), negligence (Count 2) and loss of consortium (Count 3). ECF No. 1 ¶¶ 165-190. Plaintiffs allege these harms stemmed from (1) the prosecution of ESM under the Zero-Tolerance Policy, which resulted in the separation of ESM and HSS, and (2) the conditions of confinement and treatment of Plaintiffs after they were separated. *Id.* ¶¶ 3, 13, 29, 129, 131, 133, 136.

### G. Subsequent Policy Changes.

After assuming office, President Biden took action to repudiate the policies that led to Plaintiffs' separation and to reunify the families that were affected by those policies. On February 2, 2021, the President issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and that committed the United States government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." Family Reunification Task Force EO 14011, § 1, 86 Fed. Reg. 8273, 8273. That Order created a Task Force to identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations for the potential provision of immigration benefits and mental-health services to those separated families. *Id.* § 4; *see also* Interim Progress Report, Interagency Task Force on the Reunification of Families, November 29, 2021, available at https://www.dhs.gov/sites/default/files/publications/21_1129_s1_interim-progress-report-

1   family-reunification-task-force.pdf.

2   **III.**     **LEGAL STANDARD.**

3       A defendant may move to dismiss a complaint for lack of subject matter jurisdiction

4   under Federal Rule of Civil Procedure 12(b)(1).  *See Savage v. Glendale Union High Sch.,*

5   *Dist. No. 205, Maricopa Cty*., 343 F.3d 1036, 1039-40 (9th Cir. 2003).  Courts must

6   consider the threshold issue of jurisdiction before addressing the merits of a case.  *Steel*

7   *Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Plaintiffs bear the burden of

8   establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke

9   it.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

10       "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for*

11   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The Court may dismiss an action

12   under Rule 12(b)(1) if the complaint does not allege facts sufficient to establish subject

13   matter jurisdiction on its face or, even if the complaint asserts grounds for jurisdiction on

14   its face, the evidence does not support a finding of jurisdiction.  *Thornhill Publishing Co.*

15   *v. Gen. Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).  A facial attack "asserts that

16   the allegations contained in a complaint are insufficient on their face to invoke federal

17   jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  A factual challenge allows the

18   court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's

19   allegations."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The Court also can hear

20   evidence outside the pleadings and resolve factual disputes, if necessary, without treating

21   the motion as one for summary judgment.  *Robinson v. United States*, 586 F.3d 683, 685

22   (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997). "Once

23   challenged, the party asserting subject matter jurisdiction has the burden of proving its

24   existence," and the plaintiff's allegations carry no presumption of truthfulness.  *Robinson*,

25   586 F.3d at 685.  Whether a facial or factual attack, because "[f]ederal courts … have only

26   that power that is authorized by Article III of the Constitution and the statutes enacted by

27   Congress" (*Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation

28   omitted)), the Court presumes the action lies outside its limited jurisdiction, and the burden

is on the party asserting jurisdiction to establish that it exists. *Kokkonen,* 511 U.S. at 377.

A district court cannot hear a suit against the United States unless the government has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature," meaning that a party's failure to establish a waiver of sovereign immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Robinson*, 586 F.3d at 685; *Sierra Club v. Whitman*, 268 F.3d 898, 905-906 (9th Cir. 2001).

## IV. THE CLAIMS ARE JURISDICTIONALLY BARRED.

For the reasons set forth below, Plaintiff's claims should be dismissed for lack of jurisdiction. The government does not defend the merits of the policy choices at issue in this case, which have now been repudiated. Indeed, President Biden has condemned the "human tragedy" that resulted from the Zero-Tolerance Policy, has committed not to repeat that tragedy, and has made extensive efforts to reunify families separated under the Zero-Tolerance Policy. Family Reunification Task Force EO § 1. But this case does not concern the wisdom of those now-revoked policies. Instead, it is a personal injury suit for damages under the FTCA. Plaintiffs cannot prevail on their FTCA claims because this Court lacks subject-matter jurisdiction under established legal principles.

### A. The Claims Are Barred By The Discretionary Function Exception.

#### 1. Legal Standard for Discretionary Function Exception

The United States, as a sovereign entity, is immune from suit except insofar as it has specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

The FTCA is "a limited waiver of sovereign immunity." *Gonzalez v. United States*, 814 F.3d 1022, 1026 (9th Cir. 2016). The statute allows individuals to sue the United States

when a federal employee's conduct, within the scope of his or her employment, causes "injury, loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to exceptions. *See* 28 U.S.C. § 2680.

When an exception applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). One such exception – the "discretionary function exception" ("DFE") – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *United States v. Gaubert*, 499 U.S. at 328-32. Courts must first ask whether the challenged conduct was in fact "discretionary in nature" – that is, whether the conduct involved "'an element of judgment or choice.'" *Id.* at 322 (*Berkovitz*, 486 U.S. at 536); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United States,* 794 F.3d 1104, 1109 (9th Cir. 2015). The first prong is met unless "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy. . . does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of action," the agency's actions "could be no other way than by the exercise of discretion").

Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *See GATX/Airlog Co. v. United States,* 286 F.3d 1168, 1174-75 (9th Cir. 2002). Further, where the policies that inform the conduct at issue allow the exercise of discretion, the defendant's acts or failures to act are

- 10 -

presumed to be discretionary. *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). Finally, the applicable policies and authorities must be considered in context – "the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations." *Id*. at 677 (citing *Gonzalez*, 814 F.3d at 1030).

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee was "of the kind that the discretionary function exception was designed to shield.'" *Gaubert*, 499 U.S. at 322-23. Recognizing that tort actions challenging the Government's discretionary policy judgments could "seriously handicap efficient government operations," Congress designed the DFE to "'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy' through a tort action." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). The focus of this inquiry is whether the "nature of the actions taken," pursuant to an exercise of discretion, "are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325); *Nurse*, 226 F.3d at 1001 (explaining that the decision "'need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'") (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)).

The government need not "prove that it considered these factors and made a conscious decision on the basis of them." *Kennewick Irr. Dist. v. United States,* 880 F.2d 1018, 1028 (9th Cir. 1989). Indeed, under the second prong, the government actors' subjective motive is immaterial; "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gonzalez,* 814 F.3d at 1027-28 (quoting *Gaubert,* 499 U.S. at 325) (emphasis added). Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681 (citing *Gaubert*, 499 U.S. at 324; *Chadd*, 794 F.3d at 1104). And the statutory text confirms that the exception applies "whether or not the discretion involved [was]

abused" by United States officials. 28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (DFE applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis").

If both prongs of the *Gaubert/Berkowitz* test are met, the DFE applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Nurse*, 226 F.3d at 1000. This result applies even where the government may have been negligent in the performance of such discretionary acts, as "negligence is irrelevant to the discretionary function inquiry." *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991). As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

### 2. The Decision To Prosecute ESM under the Zero-Tolerance Policy and then detain him in secure adult detention facilities pending immigration proceedings are discretionary in nature.

Plaintiffs' claims based on the decisions to prosecute ESM and detain him pending immigration proceedings, which resulted in the separation of ESM and HSS, are barred by the DFE because they involved an element of judgment or choice, and are susceptible to policy analysis. Plaintiffs do not contest that CBP lawfully apprehended them after they crossed the border illegally. Nor do Plaintiffs contest that the government had discretion to prosecute ESM under 8 U.S.C. § 1325 (illegal entry) or that the government had discretion to hold ESM in secure immigration detention pending the resolution of his asylum claim. And Plaintiffs do not dispute that the government had discretion to conclude that, in these circumstances, HSS was unaccompanied within the meaning of the TVPRA.

These decisions, which resulted in ESM and HSS's separation pursuant to the TVPRA, are quintessentially discretionary. As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed,

"[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matter of "discretion"). Thus, as the Ninth Circuit has recognized, [t]he decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability" under the FTCA. *General Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998).

As other courts have recognized, the particular prosecution policy that was in place when Plaintiff was prosecuted—the Zero-Tolerance Policy, which was subsequently revoked—"amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87. The discretionary function exception bars the Court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz*, 486 U.S. at 536; *see also Lam*, 979 F.3d at 673 (citing *Varig*, 467 U.S. at 814). In determining the applicability of the DFE, the Court looks only at whether the conduct or decision at issue is "'susceptible' to policy analysis" from an objective perspective – subjective intent is not part of the inquiry. *Gonzalez*, 814 F.3d at 1032. Here, however, the government's decisions were not merely "susceptible to" policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives, as the Complaint itself notes. *See, e.g.*, ECF No. 1 ¶¶ 32, 35, 36. 46. Following completion of his criminal sentence, ESM was transferred to ICE custody pending immigration proceedings. The government's decisions concerning where to detain ESM for immigration proceedings were also discretionary and susceptible to policy analysis. Concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). There, the federal government

- 13 -

possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[2] "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings … and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

As the Ninth Circuit has explained, "[b]ecause the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, it falls within this [FTCA] exception." *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011); *see also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by DFE); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units … must be viewed as falling within the discretionary function exception to the FTCA").

This discretion necessarily entails decisions regarding with whom noncitizens are

---

[2] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the DFE). Although the Flores Agreement contains some requirements concerning the detention of minors, it does not specifically prescribe a course of action and thus does not remove the government's discretion. Moreover, the Flores Agreement does not require release of a parent or mandate that parents be housed with a child. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007); *see supra* at 4-5. In this case, none of the "mandatory" duties Plaintiffs allege government officials violated (*see* ECF No. 1 ¶ 176 and, generally, ¶¶ 165-190) prescribes a specific course of action that the government was required to take in connection with the prosecution and immigration detention of ESM. Instead, the challenged decisions were the result of the exercise of discretion. Accordingly, the exercise of the statutory authority regarding whether and where to detain ESM for immigration proceedings following his criminal proceedings is protected by the discretionary function exception.

For similar reasons, the decision to determine that HSS was "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016). And here, the fact that ESM was referred for prosecution, was prosecuted, and was then sent to secure immigration detention following his sentence for time served supports the officials' determination that HSS should have been deemed unaccompanied and thus transferred to the custody of ORR.

In the end, Plaintiffs do not allege injury from any government action or decision that was not subject to discretion and susceptible to policy analysis. To the extent that

- 15 -

Plaintiffs suggest that the government was required to release them into the interior, did not have the discretion to prosecute ESM for criminal violations of immigration law, or did not have discretionary authority to determine that HSS was unaccompanied, the adoption of the Zero-Tolerance Policy and related Executive Branch directives regarding immigration enforcement—which have since been rescinded—are quintessential discretionary policy judgments subject to the DFE.

### 3. Plaintiff's Remaining Claims Concerning Their Conditions of Confinement Are Also Barred.

Plaintiffs' Complaint additionally alleges that their detentions violated federal law and policy related to detention conditions. Among other things, Plaintiffs allege they were not permitted to adequately communicate with each other and that their conditions of confinement were crowded and unhygienic. While these allegations are troubling, courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by DFE because they involve discretionary decisions susceptible to policy considerations. *See, e.g., Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations … including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (DFE shielded decision to transfer prisoner); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by DFE); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"). In particular, courts have held that detained individuals have "no

right to unlimited telephone use," *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), and that a detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests," *id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *see also Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

### 4. Plaintiff's assertion of unconstitutional conduct does not preclude application of the discretionary function exception.

That Plaintiffs claim that certain alleged conduct violated the Constitution does not alter the discretionary function analysis. Congress did not create the FTCA to address constitutional violations but rather to address violations of state tort law committed by federal employees. *See FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). As noted, the Supreme Court has explained that when a "federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow," there is no further discretion to exercise. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536) (emphasis added). The Constitution is no different: In some cases, the Constitution may establish such a specific prescription that removes an official's discretion. But the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute.

The Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when the conduct violated the Constitution, as long as the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known."); *see also*, *e.g.*, *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time).

Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must "specifically prescribe[]" conduct in order to overcome the discretionary function exception, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296-297 (1988)). Accordingly, the discretionary function exception is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's discretion was cabined by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. *See, e.g.*, *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the discretionary function exception.).

Indeed, even before it specifically addressed the qualified immunity standards applicable to federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), explicitly recognized that the discretionary function exception would apply even if alleged conduct might later be held unconstitutional. The Court in that case held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. The Court explained that were it otherwise, the recently recognized *Bivens* remedy would be illusory, and, as relevant here, it noted that "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id.* at 505. *Butz* and subsequent decisions thus leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the discretionary function exception.

The Ninth Circuit has declined to decide "the level of specificity with which a

constitutional proscription must be articulated in order to remove the discretion of a federal actor." *Nurse* v. *United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000); *see also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional … directive, the FTCA claims may be able to proceed to that degree."). For the reasons discussed, a court should require the same level of specificity that would be required in determining whether a statute left an employee with "no discretion to abuse."

In any event, whatever the precise standard, it is not satisfied here. Plaintiffs have alleged actions of various kinds by various officials. Regardless of whether some or all of these acts reflected an abuse of discretion, plaintiffs have identified nothing in the decisions of the Supreme Court or the Ninth Circuit that removed any official's discretion with respect to any of the categories of asserted actions by "specifically prescribe[ing] a course of action for an employee to follow." *Gaubert,* 499 U.S. at 322. Indeed, as the Fourth Circuit observed, "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019). And while some decisions, including decisions in this District, have concluded that constitutional allegations made the exception inapplicable, none has analyzed the relevant standards set out in the Supreme Court's FTCA decisions and in its decisions involving official immunity.[3] Those principles make clear that the discretionary function exception bars plaintiffs' claims.

---

[3] *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *Nunez Euceda v. United States*, No. 2:20-cv-10793, 2021 WL 4895748, *3 (C.D. Cal. Apr. 27, 2021); *C.M. v. United States*, No. CV-19-5217, 2020 WL 1698191, *4 (D. Ariz. Mar. 30, 2020).

**B.** **Plaintiffs' Claims Relating to the Decision to Transfer HSS to the Custody of ORR Is Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.**

Plaintiffs' claims relating to the decision to transfer HSS to the custody of ORR is independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation … even though the regulation may be irregular or ineffective"). Thus, where a government employee's actions are authorized by statute or regulation – even if that statute or regulation is later found unconstitutional or invalid – the claim must be dismissed for lack of subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody absent exceptional circumstances (here, because ESM was referred for criminal prosecution and later transferred to secure immigration

detention). 8 U.S.C. § 1232(b)(3). Once that discretionary determination was made, the TVPRA – which Plaintiffs do not challenge – required the separation of HSS from ESM in order to provide care and physical custody while ESM was in immigration detention. The enforcement of that statutory command cannot form the basis of an FTCA claim.[4]

## C. The Claims Are Barred Because There Is No Private-Person Analogue.

The Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private-person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted). The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45-46 (2005). Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal

---

[4] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F.*, 492 F. Supp. 3d at 996; *see Nunez Euceda*, 2021 WL 4895748, *4 (similar). But, as just described, federal law does require that children be placed into ORR custody if their parents are unavailable to provide care and physical custody. And for the reasons described above, the decision to detain those parents for prosecution is a quintessentially discretionary one. As to the other cases decided in this District, the plaintiffs were not charged with any crime, and the decisions are distinguishable on that basis.

and immigration laws and make detention determinations, there is no private-person analogue that would support a claim under the FTCA. The alleged harms here stem from the federal government's decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold the Plaintiff parent in custody pending immigration proceedings or prosecution, resulting in the Plaintiff child's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as the decisions have no private-person counterpart. *See, e.g., Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits.").

The court in *C.M.* and *A.P.F.* found a private-person analogue to nursing home employees, relying on *Estate of Smith v. Shartle*, 2020 WL 1158552 at *2 (D. Ariz. Mar 10, 2020), a case involving the Bureau of Prisons' duty toward inmates in its care. *See C.M.*, 2020 WL 1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 995. The *Shartle* court found an analogy to a nursing home's duty of care in Arizona Revised Statutes § 46-455, which imposes civil liability on nursing home employees who cause or permit the life of a vulnerable adult to be endangered by neglect. Defendant respectfully submits that a nursing home's duty to safeguard against neglect is wholly different from the federal government's enforcement of federal criminal and immigration laws, and does not provide the "persuasive analogy" required for jurisdiction under the FTCA.

### C. The Claims Are Impermissible Direct Liability or Systemic Tort Claims.

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts committed by federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th

Cir. 1995) (citing 28 U.S.C. § 1346(b)). As the Ninth Circuit has held, the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Adams v. United States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005). Hence, a plaintiff cannot assert "systemic" claims or seek to hold the United States directly liable under the FTCA, but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability for under the FTCA. *See, e.g., Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (applying *Adams* and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

Here, as in *Lee*, Plaintiffs seek to raise direct liability and institutional tort claims against the United States. Throughout the Complaint, Plaintiffs attribute the alleged tortious conduct to the government as a whole, referring throughout to "the United States government," "the U.S. government," and "the government," rather than specific tortious conduct on the part of specific federal employees for whom the United States must assume liability. *See, e.g.*, ECF No. 1 at ¶¶ 1, 5, 20, 61, 67, 212, 213, 216-219, 227-228, 231-234, 237-239; *id*. at 4:14-16, 11:12, 16:4, 20:11, 52:14-15. The FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6.

## V. CONCLUSION.

For the foregoing reasons, Defendant requests that this action be dismissed for lack of subject matter jurisdiction.

/////

/////

/////

/////

/////

- 23 -

RESPECTFULLY SUBMITTED this 1st day of February, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/ Michael A. Ambri*
MICHAEL A. AMBRI
Assistant U.S. Attorney
Attorneys for Defendant United States

Served by ECF this 1st day of February, 2022, upon:

Keith Beauchamp
D. Andrew Gaona
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004

Norma Ventura
James M. Knoepp
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031

Paul Chavez
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137

Matthew Schlesinger
Jason Carey
Teresa Park
Terra White Fulham
COVINGTON & BURLING LLP
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956

*/s/ P. Vavra*