Keith Beauchamp (012434)
D. Andrew Gaona (028414)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5490
kbeauchamp@cblawyers.com
agaona@cblawyers.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| E.S.M., on his own behalf and on behalf of his minor child, H.S.S.,<br><br>     Plaintiffs,<br> v.<br><br>United States of America,<br><br>     Defendant. | CV-21-00029-TUS-JAS<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND .......................................................................................... 2

LEGAL STANDARD .................................................................................... 5

ARGUMENT ............................................................................................... 6

I.   The DFE Does Not Apply Because the Separation Violated Plaintiffs'
     Constitutional Rights and Was Not Based on Considerations of Public
     Policy. ............................................................................................. 7

     A.   Defendant's Unconstitutional Separation of Plaintiffs Cannot
          Qualify as Discretionary. ......................................................... 7

     B.   Plaintiffs' Separation Did Not Result from the Enforcement of
          Federal Law. .......................................................................... 10

     C.   Separating Eliot From His Child Was Not Based on Considerations
          of Public Policy. .................................................................... 13

II.  The Due Care Exception Does Not Apply Because No Statute or
     Regulation Required Separating Plaintiffs and Defendant Did Not Act With
     Even Minimum Care. ....................................................................... 14

     A.   There Are No Federal Statutes or Regulations that Mandated the
          Forcible and Prolonged Separation of Eliot and Héctor. ............ 15

     B.   Defendant Failed to Exercise Due Care in its Forcible and Prolonged
          Separation of Plaintiffs. .......................................................... 17

III. The Court Has Subject Matter Jurisdiction Because Defendant, if a Private
     Person, Would Be Liable for Its Actions. ........................................... 18

     A.   Defendant's Conduct Has Private Analogues in Arizona Law. ....... 19

     B.   There Is No Exception to Defendant's Waiver of Sovereign
          Immunity Based on the Performance of Any "Uniquely
          Governmental Function." ......................................................... 20

i

IV.     Plaintiffs Are Not Seeking to Hold the United States, or Any Agency,
        Directly Liable Under The FTCA. .......................................................................... 22

CONCLUSION ............................................................................................................... 23

**PRELIMINARY STATEMENT**

There is no dispute between the parties that the United States' practice under the prior administration of separating families at the United States-Mexico border was a "human tragedy." Motion at 2. Plaintiffs E.S.M. (also referred to as "Eliot") and his son H.S.S. (also referred to as "Héctor") are two victims of this tragedy.

Eliot and Héctor came to the United States fleeing persecution and death threats in their home country of Guatemala. Instead of finding safety and asylum as permitted under U.S. immigration laws, Plaintiffs suffered significant trauma inflicted by Defendant ("the United States" or "the Government"). Upon arrival, U.S. agents forcibly separated Eliot from 11-year-old Héctor and sent Héctor to a government facility thousands of miles away. Eliot received no information about his son's whereabouts or wellbeing and was provided no assurance as to when, or whether, they would be reunited. Defendant kept Eliot and Héctor apart without any communication for two weeks, and allowed only limited communication thereafter. After two months of separation, and only by court order, Eliot and Héctor were finally able to see each other again. The separation has caused Plaintiffs lasting trauma and suffering.

Defendant intentionally inflicted these harms on Plaintiffs. Indeed, this pain and trauma was Defendant's cruel and unconstitutional goal: it implemented a specific policy of forcibly separating parents crossing the southwest border of the United States from their children, to inflict emotional harm and deter future asylum seekers.

Eliot and Héctor seek compensation under the Federal Tort Claims Act (the "FTCA") for the harms inflicted upon them by Defendant, asserting counts of intentional infliction of emotional distress ("IIED"), negligence, and loss of consortium. Despite "condemning" its separation of families as a "human tragedy," Defendant now argues in its Motion to Dismiss that the injuries are not compensable as torts, asserting various

exceptions to the FTCA. Defendant is wrong, and—as it admits—its arguments have been rejected by courts in this jurisdiction addressing the same harms.[1]

*First*, the discretionary function exception does not apply because the Government does not have "discretion" to violate the Constitution, and Plaintiffs have plausibly alleged that the Government's forcible and prolonged separation of Plaintiffs was unconstitutional.

*Second,* the due care exception does not apply because Defendant does not—and cannot—identify any statutes or regulations mandating the separation of Plaintiffs, and alternatively, because the Government did not exercise due care in separating Plaintiffs.

*Third*, each of Plaintiffs' tort claims are supported by private person analogues grounded in Arizona law and have been unanimously recognized in similar FTCA claims in this jurisdiction.

*Finally*, Defendant's misreading of Plaintiffs' claims does not transform them into direct liability or systematic tort claims. Plaintiffs' Complaint, which sets forth that the policy of separating families to inflict emotional harm was conceived, drafted, adopted, and implemented by discrete and identifiable individual agents of the U.S. Government, is more than sufficient to meet the plausible allegation standard.

As several other courts have determined, the Government's conduct is actionable under the FTCA. Plaintiffs deserve compensation for the harms caused, and Defendant's Motion to Dismiss must be denied.

## **BACKGROUND**

After experiencing death threats in their home in Guatemala, Plaintiffs Eliot and his 11-year-old son Héctor came to the United States seeking asylum in May 2018. Compl. ¶ 68. After crossing the border from Mexico on May 19, 2018, they were

---

[1] *See Nunez Euceda v. U.S.*, No. 20-CV-10793, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021); *A.P.F. v. U.S.*, No. 20-CV-00065, 492 F. Supp. 3d 989 (D. Ariz. 2020); *C.M. v. U.S.*, No. 19-CV-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020).

encountered by Customs and Border Protection ("CBP") officers who took them to the Ajo Border Patrol Station. *Id.* at ¶ 69. There, they were kept in crowded, freezing concrete cells with no beds. *Id.* at ¶¶ 70, 72. Their warm clothes were taken from them, and they were not given any privacy or the ability to bathe themselves. *Id.* at ¶¶ 70-71. On the second day in the cell, officers informed the Plaintiffs and other families that the children would be taken away from their parents. *Id.* at ¶ 74. 11-year-old Héctor cried, telling his father he feared they would never be reunited. Officers, nonetheless, forced Héctor onto a bus with other children to be taken to another Department of Homeland Security ("DHS") facility. *Id.* at ¶¶ 76-82. Eliot pleaded, but no officers would tell him where his son was taken. *Id.* at ¶ 84.

The next day, May 21, 2018, Eliot was taken to a court. *Id.* at ¶¶ 85, 87. He was charged with misdemeanor improper entry to the United States, and told that if he pled guilty he would get sentenced to time served, which he did. *Id*. He begged to be reunited with his son, and the presiding federal magistrate judge recommended that this should happen. *Id*. After being sentenced, he was returned to DHS immigration custody, but still kept from his son, who was being held by DHS at a different facility. *Id.* at ¶ 88.

At that time, Héctor had not been transferred to the Office of Refugee Resettlement ("ORR"), and Eliot did not have any criminal sentence to serve. *Id.* at ¶ 88 n.49. Though both were in DHS custody, Plaintiffs were not reunited. Instead, Eliot was moved to immigration detention in Arizona and then Georgia. *Id.* at ¶¶ 93, 96. He had no idea when, or even if, he would be reunited with his son. Officers refused to give Eliot any information about his son, or told Eliot that they did not know where Héctor was and could not connect Eliot with his son. *Id.* at ¶¶ 92, 97. Eliot was only able to contact Héctor two weeks after they were separated, and then only through the efforts of Eliot's brother, who found the contact numbers for Héctor's case manager and provided Eliot money to make the call. *Id.* at ¶¶ 97-98.

While Eliot was in immigration detention, Héctor was being held at a private shelter contracted by ORR, where he had been sent the day *after* his father had been sentenced to "time served." *Id.* at ¶ 107 (emphasis added). While at the shelter, Héctor "displayed feeling of sadness regarding his separation from his father," expressed that he missed his father, and suffered abuse and threats from other children. *Id.* at ¶¶ 108-113. On June 26, 2018, Judge Sabraw issued a preliminary injunction in the *Ms. L.* litigation ordering that separated families be reunited within 30 days. *Id.* at ¶ 104. Even with the order, it was not until July 20, 2018, a full two months after separation, that Eliot and Héctor were finally reunited. *Id.* at ¶¶ 116-118. Throughout the separation, Eliot remained in the custody of DHS, *id.* at ¶ 89, and no determination was ever made that Eliot was unfit or presented a danger to his son, *id.* at ¶ 91.

Plaintiffs continue to suffer the effects of the separation. Héctor has become distant, has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") with dissociative subtype, and has weekly flashbacks and nightmares related to the separation. *Id.* at ¶¶ 121-122. Eliot feels he has been psychologically damaged, has also been diagnosed with PTSD and depression, and still struggles with the fear his son will once again be taken from him. *Id.* at ¶¶ 123-124.

Plaintiffs experienced this trauma because Defendant decided that their suffering might deter families from seeking asylum in the United States. *Id.* at ¶¶ 3, 31. Defendant conceived of this family separation policy (the "policy") as early as February 2017, when DHS officials began considering systematically separating families as a means of deterring the arrival of asylum seekers on the border. *Id.* at ¶¶ 32, 36. Defendant knew that extraordinary harm would result from such separations, as reported by its own advisory committees, warnings from the medical community, and concerns raised by the Deputy Director of ORR's Unaccompanied Alien Children ("UAC") program. *Id.* at ¶¶ 33-35.

Under the guise of enforcing criminal immigration laws, Defendant pilot tested this policy in the El Paso sector by targeting parents arriving with children for prosecution for immigration offenses. *Id.* at ¶ 41. Despite the concerns raised by judges, prosecutors, and advocates, after the conclusion of the pilot test, DHS and the Department of Justice ("DOJ") broadly implemented a policy to take children away from their parents. *Id.* at ¶¶ 41, 43, 45-49. As part of the separations, Defendant improperly re-classified the children of parents referred for prosecution as UACs—a designation intended for children who arrive at the border truly "unaccompanied" by family members—and sent the children far from their parents without documenting the familial relationship, making reunification highly difficult. *Id.* at ¶¶ 41, 44. High level officials confirmed on numerous occasions that they "need[ed] to take away children" for the purpose of deterrence of other migrants from Latin America. *Id.* at ¶¶ 56-58.

Defendant exacerbated the harms faced by separated families by failing to establish any method to track the location of a child's parents in custody or mechanism to reunify separated families. *Id.* at ¶¶ 44, 45, 48, 51-53, 137-140. In addition, the Government did not immediately reunite families after parents received "time served" sentences, despite having the power to do so. *Id.* at ¶ 52, 88 n.49.

## **LEGAL STANDARD**

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) in a facial challenge to this Court's subject matter jurisdiction. In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the court must "accept[] the allegations of the complaint as true and afford[] plaintiffs the benefit of all favorable inferences that can be drawn from the alleged facts." *See C.M.*, No. 19-CV-05217, 2020 WL 1698191, at *1 (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

1

## **ARGUMENT**

2        Plaintiffs assert claims of IIED, negligence, and loss of child's consortium against

3  the United States pursuant to the FTCA, 28 U.S.C. §§ 2671-2680. *See* Compl. ¶¶ 165-90.

4  The FTCA confers federal jurisdiction over tort claims for the negligent or wrongful acts

5  or omissions of government actors "under circumstances where the United States, if a

6  private person, would be liable to the claimant[.]" 28 U.S.C. § 1346(b)(1).

7        The FTCA's waiver of sovereign immunity contains certain exceptions, which

8  must be read narrowly. *O'Toole v. U.S.*, 295 F.3d 1029, 1037 (9th Cir. 2002). These

9  exceptions include (1) the discretionary function exception ("DFE"), *see* 28 U.S.C. §

10  2680(a) (excluding any claim "based upon the exercise or performance or the failure to

11  exercise or perform a discretionary function or duty on the part of a federal agency or an

12  employee of the Government") and (2) the due care exception, *see id.* (excluding "[a]ny

13  claim based upon an act or omission of an employee of the Government, exercising due

14  care, in the execution of a statute of regulation, whether or not such statute or regulation

15  be valid"). The Government bears the burden to prove any exceptions apply. *Prescott v.*

16  *U.S.*, 973 F.2d 696, 701-02 (9th Cir. 1992) (citing 28 U.S.C. § 1346(b)).

17        Defendant wrongly argues that Plaintiffs' FTCA claims are barred because (1) the

18  discretionary function exception applies, (2) the due care exception applies, (3) there is

19  no private person analogue for Plaintiffs' claims, and (4) "a plaintiff cannot assert

20  'systemic' claims" against "the United States directly." Mot. at 9, 20-23. These very

21  same arguments have been made repeatedly by Defendant and rejected by Courts in this

22  district. *See Nunez Euceda*, 2021 WL 4895748; *A.P.F.*, 492 F. Supp. 3d 989; *C.M.*, 2020

23  WL 1698191.

24        These arguments similarly fail here because (1) the Government has no discretion

25  to violate the Constitution—which they did when they violated Plaintiffs' rights to equal

26  protection and due process, (2) there was no statute or regulation mandating Plaintiffs'

27  separation and Defendant did not act with even minimal care, (3) multiple courts have

28

already determined apt analogs exist for the challenged conduct, and (4) Plaintiffs are not making "systemic claims."

I.    **The DFE Does Not Apply Because the Separation Violated Plaintiffs' Constitutional Rights and Was Not Based on Considerations of Public Policy.**

To invoke the DFE, Defendant bears the burden to establish both that a challenged action (1) involved an element of judgment or choice, and (2) was based on considerations of public policy. *U.S. v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Chadd v. U.S.*, 794 F.3d 1104, 1108 (9th Cir. 2015) (burden is on the Government). Failure on either prong prevents application of the DFE, and Defendant has failed to meet its burden.

A.    **Defendant's Unconstitutional Separation of Plaintiffs Cannot Qualify as Discretionary.**

Plaintiffs have sufficiently pled that the Government's conduct in separating Plaintiffs is unconstitutional, and, therefore, cannot qualify as discretionary for purposes of the DFE. Further, Defendant's attempt to import qualified immunity case law into the FTCA context is wrong as a matter of law and should be rejected.

"In general, governmental conduct cannot be discretionary if it violates a legal mandate." *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004). Because "federal officials do not possess discretion to violate constitutional rights," the DFE does not apply where constitutional violations occur. *Id.* at n.13. Accordingly, Defendant cannot meet its burden when, like here, a plaintiff plausibly pleads that the Government's actions are unconstitutional. *Nurse v. U.S.*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000); *A.P.F.*, 492 F. Supp. 3d at 996.

Many courts have determined that Defendant's practice of separating families at the border is likely unconstitutional. In fact, the Government has "agree[d] that a constitutional violation occurred when the Government separated children from their parents[.]" *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731 (D. Conn. 2018). The *Ms. L. II* court enjoined the Government's family-separation practice, finding

- 7 -

the likelihood of success on the substantive due process claim to be "assured." *Ms. L. v. U.S. I.C.E. (Ms. L. II)*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018). Defendant does not and cannot cite a single case finding that the forcible separation of families in circumstances similar to those alleged is constitutional.

Here, Plaintiffs' complaint sets forth plausible allegations that Defendant's conduct violated their constitutional right to equal protection under the law, and that the Defendant's separation of families was an unconstitutional violation of Plaintiffs' due process right to family integrity, Compl. ¶¶ 129-30, 136,[2] which are sufficient to reject the Government's attempt to avoid liability under the DFE. Without exception, courts in this District and others have concluded that, because the Government's practice of forcibly separating families was likely unconstitutional, the DFE does not shield the Government from liability for the harm caused by the separations.[3] In *C.M.*, the court found that plaintiffs had "plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception." 2020 WL 1698191, at *4; *see also Nunez Euceda*, 2021 WL 4895748, at *3 (DFE did not bar claims where plaintiff plausibly alleged that the

---

[2] *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 518-19 (9th Cir. 2018), *cert. granted sub nom*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 139 S. Ct. 2779 (2019); *Ms. L. II*, 310 F. Supp. 3d at 1145 (finding that the Government's "practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their [substantive] due process claim."); *Ms. L. v. U.S. I.C.E. (Ms. L. I)*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) (denying Government's motion to dismiss substantive due process claims based on separation of children from parents during immigration detention).

[3] Defendant's reliance on *Pena Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020) is unpersuasive because that court never considered the constitutionality of the practice of family separation.

Government's policy of separating families at the border violated his constitutional rights); *A.P.F.*, 492 F. Supp. 3d at 996 ("Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs.").

The fact that Eliot was prosecuted and held in immigration detention does not lead to a different result from *C.M.*, *A.P.F.*, and *Nunez Euceda*. Courts recognize that prosecution of a parent does not render the separation of a family constitutional or remove their constitutional protections. In *Jacinto-Castanon de Nolasco v. U.S. I.C.E.*, plaintiff was transferred to criminal detention pending prosecution for improper entry under 8 U.S.C. § 1325(a), to which she later pled guilty and was sentenced to time served. 319 F. Supp. 3d 491, 496 (D.D.C. 2018). Plaintiff was subsequently transferred to immigration detention, but remained separated from her children. *Id.* The Government argued that "because [Plaintiff] is in lawful immigration custody, she is 'unavailable to provide care and physical custody' for purposes of the TVPRA, and therefore custody of her sons must be transferred to ORR." *Id.* at 500. The court rejected this argument holding that "the fact that [Plaintiff] is lawfully detained in immigration custody does not eliminate her due process right to family integrity." *Id.* The Court concluded that plaintiffs were likely "to succeed on . . . their substantive due process claim that their continued separation . . . violate[d] their right to family integrity under the Fifth Amendment." *Id*. at 499. Like the plaintiff in *Jacinto-Castanon*, Eliot remained in immigration custody at all times despite his prosecution, and thus the separation of Eliot and Héctor was similarly unconstitutional.

Because existing law does not support the Defendant's position that the DFE applies in this case, Defendant now asks this Court to find that Defendant has discretion to violate a constitutional right unless the right was "clearly-established" when the violation occurred. Mot. at 17-18. However, this is not the standard used in considering the DFE in suits under the FTCA. The "clearly-established" standard is used to determine

qualified immunity defenses in suits against government officials in their individual capacity, which is not at issue here.[4] Defendant fails to cite a single case applying the "clearly-established" standard to determine whether the DFE applies. *See Loumiet v. U.S.*, 828 F.3d 935, 946 (D.D.C. 2016) (observing that it had "found no precedent in any circuit holding" that "principles similar to those that undergird qualified immunity should extend to preserve discretionary-function immunity for some unconstitutional acts").

Under Ninth Circuit law, the DFE does not apply where plaintiffs plausibly allege that government officials violated their constitutional rights, even if the right was not "clearly established."  In *Galvin v. Hay*, the plaintiff brought both a *Bivens* claim against a government official and a FTCA claim against the Government. 374 F.3d at 744. The court held that while the defendant official was entitled to qualified immunity because the constitutional right was not clearly established, the DFE did not shield the Government from FTCA liability for the same conduct. *Id.* at 758 (quoting *Nurse*, 226 F.3d at 1002 & n.2) (reasoning DFE did not apply because the "defendants violated the Constitution" and "government conduct cannot be discretionary if it violates a legal mandate.").

The Ninth Circuit has long held that "[f]ederal officials do not possess discretion to violate constitutional rights." *Id.*  And, the overwhelming weight of authority in this Circuit has found that allegations regarding the Defendant's practice of forcibly separating families at the border implicate a constitutional violation and are sufficient to preclude application of the DFE. *See, e.g.*, *C.M.*, 2020 WL 1698191, at *4; *Ms. L.*, 302 F. Supp. 3d at 1160-61 n.5.

### B.   Plaintiffs' Separation Did Not Result from the Enforcement of Federal Law.

Recognizing the weight of authority is against it, Defendant attempts to recast the family separation policy as a discretionary prosecution policy. Defendant argues that

---

[4] Defendant cites qualified immunity cases without alerting the Court to their inapplicability here. *See, e.g.*, Mot. at 17-18 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

Plaintiffs' claims fall within the DFE because Defendant has "broad discretion" to "enforce the Nation's criminal laws," "decide whether to prosecute a case," and "arrange for appropriate places of detention." Mot. at 12-14. Defendant further asserts that the decision to prosecute Eliot under the Zero-Tolerance Policy and then detain him in secure adult facilities pending immigration proceedings is discretionary and makes this case distinguishable from other separation cases, and that the decision that Héctor was a UAC within the meaning of the Trafficking Victims Protection Reauthorization Act ("TVPRA") required Defendant to transfer him to ORR custody necessarily flowed from this prosecution.[5] Mot. at 12.

This argument is a red herring and fails to address the unconstitutionality of the Government's forcible and prolonged separation of Plaintiffs. As the court in *Jacinto-Castanon de Nolascov* accurately pointed out, "the fact that [an individual] may be subject to some form of immigration detention does not explain why [they] must be detained separately. . . . The same goal of detention can be accomplished, for example, by temporarily detaining families together in family residential facilities." 319 F. Supp. 3d at 501. Taken to its logical extreme, the Government's argument would necessarily allow an unconstitutional act to evade FTCA liability as long as an arguably related act involved a discretionary decision. Defendant cannot escape liability for its tortious separation of Plaintiffs by pointing to subsidiary acts.

Defendant's claim that Eliot and Héctor were necessarily separated because of the Government's discretionary decision to prosecute Eliot is also wrong on the facts: while Eliot pled guilty to the misdemeanor of improper entry under 8 U.S.C. § 1325(a), he was sentenced to time served and was never transferred to criminal custody. Instead, after Eliot's hearing, he was immediately returned to a DHS facility *before* Héctor was transferred to ORR custody. As Defendant has recognized, DHS had every opportunity to

---

[5] Héctor was not a "true unaccompanied minor[] within the meaning of the statute; [he was] rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants." *Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 496 n.2.

cancel a child's transfer and reunite the family in DHS custody since the child did not meet the definition of a UAC. Compl. ¶ 88 n.49.

In sum, Plaintiffs plausibly allege that Defendant had a deliberate policy of taking children away from their parents to inflict terror and deter future immigrant families from seeking asylum, and that Defendant separated Eliot and Héctor pursuant to this unconstitutional policy. Mot. at 5–6; *see J.S.R. by and through J.S.G.*, 330 F. Supp. 3d 731 (D. Conn. 2018) (finding the Government "agree[d] that a constitutional violation occurred when the Government separated children from their parents."). Defendant's arguments do not address the specific conduct challenged by Plaintiffs, and therefore fail.

Defendant also wrongly argues that other individual allegations in the Complaint comprise claims that are barred by the discretionary function exception. *See* Mot. at 12, 14-17 (singling out allegations of detaining Eliot pending his immigration proceedings, which resulted in the separation of him and his child; not permitting adequate communication; and providing conditions of confinement which were crowded and unhygienic). These are not standalone claims but are facts that show the ways in which the harm of family separation was compounded. Compl. ¶¶ 137-40. They also show that Defendant acted with intent or recklessness and fell below its duty of care. *Id.* at ¶ 13.

Plaintiffs' allegations regarding violations of federal law and policy relating to detention conditions and failure to facilitate communications do not comprise freestanding claims, but rather state facts that, together with the forcible separation of Plaintiffs' family and other allegations, give rise to Plaintiffs' claims of IIED, negligence, and loss of consortium. *See id.* at ¶¶ 165-90. The Court in *C.M.* rejected a nearly identical challenge by the Government to isolated factual allegations regarding detention conditions, limited communication among separated parents and children, and the Government's failure to track families. *See C.M.*, 2020 WL 1698191, at *4, n.5.

Defendant's attempts to mischaracterize Plaintiffs' claims should be rejected, consistent with decisions in other cases in this jurisdiction. *See id.* at *4 (refusing to parse

through the Complaint to assess whether claims regarding individual factual allegations were barred); *A.P.F.*, 492 F. Supp. 3d at 996-97 ("reject[ing] the United States' re-categorization of Plaintiffs' factual allegations as standalone claims"); *see also Nunez Euceda*, 2021 WL 4895748, at *3, 5 (denying motion to dismiss).

### C.   Separating Eliot From His Child Was Not Based on Considerations of Public Policy.

Defendant also cannot satisfy its burden to meet the second prong of the DFE because it cannot demonstrate that the forcible, prolonged separation of the Plaintiffs "implement[ed] social, economic, or political policy considerations." *Nurse*, 226 F.3d at 1001. "It is not sufficient for the government merely to waive the flag of policy as a cover for anything and everything it does that is discretionary in nature." *Peterson v. Martinez*, No. 3:19-cv-01447-WHO, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020). Because "the Government has the burden of proving the [DFE] applies . . . [t]here must be reasonable support in the record for a court to find, without imposing its own conjecture, that a decision was policy-based or susceptible to policy analysis." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1216 (9th Cir. 2001).

Defendant fails to identify what policy objectives the prolonged separation of families served. "[N]othing in federal law suggests that deterring immigration by indefinitely separating families once the parents have been transferred to immigration custody is a compelling or legitimate government objective." *Jacinto-Castanon de Nolascov*, 319 F. Supp. 3d at 502. The "cruelty of . . . separation of a parent and child by the government" is only justified "in the most dreadful circumstances," such as when the parent is "unwilling or unfit" to care for the child—circumstances that are not present here. *D.J.C.V. v. U.S. I.C.E.*, No. 18 Civ. 9115 (AKH), 2018 WL 10436675, at *1 (S.D.N.Y. Oct. 15, 2018). Defendant itself recognized that "this Administration has committed the federal government to 'protect family unity and ensure that children entering the United States are not separated from their families, except in the most

extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law.'" Mot. at 2. So while Defendant ambiguously asserts that it "spelled out the policies it sought to further" by separating Plaintiffs in "a series of Executive Branch directives," Mot. at 13, these "directives" do not concern the forcible and unconstitutional separation of parents from their children for the purpose of inflicting emotional harm, as is challenged here. Compl. ¶¶ 165–90.

Moreover, Defendant failed to prepare, monitor, and supervise federal employees and contractors as it overwhelmed ORR with increasing numbers of children who had been forcibly torn away from their parents because of its family separation policy. *Id.* at ¶¶ 137-40. Defendant ignored concerns raised by ORR employees that ORR lacked the systems needed to handle an increase in children in its custody. *Id.* at ¶¶ 44–48. Such conduct does not reflect the "weighing of practical and policy considerations [that] represent the kind of policy judgment that Congress intended to protect through the discretionary function exception[.]" *Marlys Bear Med.*, 241 F.3d at 1214. Accordingly, Plaintiffs' plausible allegations of constitutional violations preclude the application of the DFE.

## II. The Due Care Exception Does Not Apply Because No Statute or Regulation Required Separating Plaintiffs and Defendant Did Not Act With Even Minimum Care.

Defendant next incorrectly argues that Plaintiffs' claims are barred by the due care exception ("DCE") because Defendant was required, by statute, to transfer Héctor to the care of ORR after it determined that Eliot was unable to provide care and physical custody. *See* Mot. at 20-21. Defendant's invocation of the DCE fails because no statute or regulation mandated the course of action that harmed Plaintiffs, which included the Government's forcible separation of Plaintiffs, improper designation of Héctor as a UAC, and failure to reunite Plaintiffs for several months.

To determine whether the DCE applies, Courts in this Circuit apply a two-part test set forth in *Welch v. U.S.*, 409 F.3d 646, 652 (4th Cir. 2005). *See e.g.*, *A.P.F.*, 492 F. Supp. 3d at 995; *C.M.*, 2020 WL 1698191, at *3; *Gonzalez v. U.S.*, No. 12-CV-01912, 2013 WL 942363, at *3 (C.D. Cal. Mar. 11, 2013). In order for the DCE to apply, the defendant must first prove that the "statute or regulation" at issue mandated a course of action. *Welch*, 409 F.3d at 652. If there is such a statute or regulation that mandated the action, the defendant must then show that the government actor "exercised due care in following the dictates of that statute or regulation." *Id.* Defendant fails to satisfy both parts of the test.

### A.   There Are No Federal Statutes or Regulations that Mandated the Forcible and Prolonged Separation of Eliot and Héctor.

With respect to the first prong of the DCE, this District has already found that there is no statute or regulation that mandated separations of families upon entry into the country. *See A.P.F.* 492 F. Supp. 3d at 995-96. Yet, Defendant argues that the TVPRA, 8 U.S.C. § 1232(b)(3), required the separation of Eliot from Héctor.[6] The TVPRA requires that the Federal Government transfer the custody of a child to ORR custody "not later

---

[6] Defendant ignores the *Welch* standard previously applied in this Circuit, *see C.M. v. U.S*, 2020 WL 5232560, at *4 (D. Ariz. July 6, 2020) (upholding the *Welch* two-part test in analyzing the due care exception); *A.P.F.*, 492 F. Supp. 3d at 995-96, and argues that a statute or regulation need only *authorize* the conduct that caused the harm. *See* Mot. at 20. Defendant cites three older and inapposite decisions. *See Borquez v. U.S.*, 773 F.2d 1050, 1052 (9th Cir. 1985) (dismissing an FTCA claim because the plaintiff's claim challenged the legality of a statute that specifically authorized the Government's course of action); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 365 (7th Cir. 1979) (not involving an analysis of the due care exception, but instead analyzing whether the claim should be analyzed under the FTCA or the sue-and-be-sued doctrine); *Sickman v. U.S.*, 184 F.2d 616, 619-20 (7th Cir. 1950) (not analyzing the due care exception because the plaintiffs did not allege that employees of the federal government were not exercising due care).

than 72 hours after determining that there is no parent available to provide care and physical custody absent exceptional circumstances." Mot. at 20.

The Government's argument—that Eliot was unavailable to provide care of his son due to his referral for criminal prosecution for improper entry, therefore rendering Héctor a UAC under the TVPRA and requiring separation (*id.* at 20-21)—hinges on incorrect facts. As discussed above at Section I.B, because (1) Eliot was never in criminal custody (he received a sentence of time served and was returned to a DHS facility immediately after his hearing, where he remained throughout the separation), *see* Compl. ¶ 87, 89; Mot. Ex. B, and (2) Héctor was transferred to ORR custody only *after* Eliot had already been returned to a DHS facility following his court appearance, both Eliot and Héctor were in DHS custody before the separation, and Eliot was available to care for his son. *Id.* at ¶ 88; *see, e.g., Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 500-01. The Government, therefore, has failed to cite to any law mandating the separation of Héctor from Eliot due to Eliot's referral to criminal prosecution.

In fact, the TVPRA likely requires the exact opposite of separation, as it mandates that Defendant "promptly [place unaccompanied alien children] in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Given that Eliot was in DHS custody, and therefore available to care for Héctor—who was also still in DHS custody—remaining together would have been in the best interest of Héctor.

Defendant's reliance on the TVPRA is simply an attempt to distract from the fact that Eliot and Héctor were separated pursuant to an unconstitutional executive policy meant to deter immigrant families such as Plaintiffs from entering the United States, rather than any statute or regulation. *See generally* Compl. ¶¶ 31-67; *see also A.P.F.* 492 F. Supp. 3d at 996 ("the family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation."); *C.M.*, 2020 WL 1698191, at *3 ("[F]amily separation was established by executive policy—not by a statute or regulation—which is not covered by the due care exception[.]"). Both parties here agree that the DCE applies

only where there is a statute or regulation in question, and that it does not encompass executive policies. *See* Mot. at 20; *A.P.F.*, 492 F. Supp. 3d at 996 ("[a]ctions taken pursuant to executive policy are not shielded by the due care exception."). Defendant also acknowledges this executive policy harmed Plaintiffs and admits that it has ceased "the prior practice of separating children from their families." Mot. at 2. Accordingly, because the separation of families as alleged in the Complaint was not mandated by a statute or regulation, Defendant does not meet the first prong of the DCE.

### B. Defendant Failed to Exercise Due Care in its Forcible and Prolonged Separation of Plaintiffs.

Additionally, the DCE requires that Defendant show it exercised due care in separating Plaintiffs for two months. *Welch*, 409 F.3d at 652. Like the first prong of the DCE, Defendant has not met its burden. Here, perhaps recognizing the "human tragedy" of the family separations, Defendant fails to address this part of the DCE. *See* Mot. at 2. Given that it is the Government's burden to prove the DCE applies, that failure, on its own, is reason enough to reject application of the DCE to Plaintiffs' claims.

Due care requires "at least some minimal concern for the rights of others." *Myers & Myer, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975). Here, Plaintiffs have sufficiently alleged facts showing the Defendant had minimal concern for others in separating Plaintiffs. Defendant detained Plaintiffs in a crowded and frigid cell where they slept on the floor, with little food to eat. Compl. ¶ 70. Defendant separated Plaintiffs without any indication of why they were being separated, where they were going, how long they would be separated, or if they would ever see each other again. *Id.* at ¶ 82, 85, 92, 97, 105. Plaintiffs spent two weeks of separation without hearing from each other. When afforded a chance to speak, they were given just minutes. *Id.* at ¶ 98. Afterwards, Defendant allowed them to speak only about once a week. *Id.* at ¶ 100. While in Defendant's care, Héctor experienced not only sorrow due to his separation from his

father, but also physical and emotional harm. *Id.* at ¶ 108, 100, 112. Defendant did not exercise even a minimum level of compassion, let alone due care.

Accordingly, Defendant fails both parts of the DCE. There is no statute or regulation that mandated the forcible and prolonged separation of Plaintiffs, and, even if there were, Defendant did not exercise due care in carrying out the separation. Despite these deficiencies, Defendant argues in a footnote that this Court should not follow the other decisions in this District because Eliot was charged with a misdemeanor. Mot. at 21 n.4. This irrelevant distinction does not justify a different result from those cases because, as explained above, Eliot was sentenced to time served and detained in immigration-related detention throughout the entirety of the separation, as were the plaintiffs in *A.P.F.* and *C.M. See* Compl. ¶ 87-89; Mot. at 20. Plaintiffs here were separated pursuant to the same executive policy at issue in the other decisions in this District and were treated with the same lack of care. Therefore, Plaintiffs' plausible allegations of constitutional violations preclude the application of the DCE.

### III. The Court Has Subject Matter Jurisdiction Because Defendant, if a Private Person, Would Be Liable for Its Actions.

Defendant's contention that the "government acts that Plaintiffs challenge have no private-person analogue," Mot. at 21, is wrong and counter to the findings of multiple courts in this District examining this issue under nearly identical FTCA circumstances.

The FTCA confers federal subject matter jurisdiction over tort claims for the "negligent or wrongful act or omission of" government actors "under circumstances where the United States, if a private person, would be liable to the claimant[.]" 28 U.S.C. § 1346(b)(1). The Supreme Court has made clear that the private analogue doctrine, which provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, must be interpreted broadly. *Indian Towing Co. v. U.S.*, 350 U.S. 61, 69 (1955). "[L]ike circumstances" does not mean "under the same circumstances." *C.M.*, 2020 WL

1698191, at *2. Instead, courts must look "further afield" to identify analogous torts relating to the government activity at issue, *U.S. v. Olson*, 546 U.S. 43, 46 (2005), in order to find "the most reasonable analogy," *C.M.*, 2020 WL 1698191, at *2; *see also Firebaugh Canal Water Dist. v. U.S.*, 712 F.3d 1296, 1303 (9th Cir. 2013) (private analogue need not be "exactly on point" but rather "appropriate"); *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010) ("Analogy not identity of circumstance is key.").

### A.   Defendant's Conduct Has Private Analogues in Arizona Law.

Arizona law supplies a private person analogue for the Court to consider for each of the torts Plaintiffs allege under the FTCA. Plaintiffs have pled facts to support Arizona tort claims that apply in circumstances sufficiently similar and nearly identical to the claims at issue. Private persons have been held liable, pursuant to Arizona law, for IIED, negligence, and loss of consortium—the causes of action Plaintiffs assert—under circumstances alike those alleged here.

First, courts have recognized claims of IIED and negligence under Arizona law in analogous circumstances, *see, e.g., Pankratz v. Willis*, 155 Ariz. 8, 10, 22 (Ct. App. 1987) (upholding IIED verdict in favor of parent whose in-laws facilitated and concealed the disappearance of parent's child); *Martinez v. U.S.*, No. 13-CV-955, 2018 WL 3359562, at *11 (D. Ariz. July 10, 2018) (denying Government's summary judgment motion on IIED claim against CBP agents where agents separated a family, threatened incarceration, and offered to release the plaintiff's children if he confessed), including this District in nearly identical circumstances, *see A.P.F.*, 492 F. Supp. 3d at 994 (IIED, negligence, and loss of consortium); *C.M.*, 2020 WL 1698191, at *2 (IIED and negligence). Second, under Arizona law, courts in this District have recognized claims for loss of consortium in analogous circumstances, *see, e.g., A.P.F.*, 492 F. Supp. 3d at 995; *Bickler v. Senior Lifestyle Corp.*, No. 09-CV-00726, 2010 WL 2292985, at *1 (D. Ariz. June 8, 2010) (denying defendant's motion for summary judgment for loss of consortium claim brought by adult sons and daughters whose mothers mentally suffered after being pushed to the

ground at a nursing home run by the defendant); *Dobek v. Wal-Mart Stores, Inc.*, No. 03-CV-297, 2007 WL 2069832, at *4 (D. Ariz. July 17, 2007) ("Arizona courts treat loss of consortium claims as one body of law, regardless of whether the plaintiff is a child or a parent.").

There is no doubt that Arizona law recognizes the Plaintiffs' causes of action and therefore, Defendant has waived sovereign immunity for the alleged tortious conduct under the FTCA.

**B.      There Is No Exception to Defendant's Waiver of Sovereign Immunity Based on the Performance of Any "Uniquely Governmental Function."**

Defendant baselessly asserts, despite contrary and controlling case law, that there is no private person analogue since "only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations." Mot. at 21-22. Defendant's argument is unavailing and has been squarely rejected under Arizona law.

First, it is settled law that the United States can be liable for activities over which the federal government has exclusive authority. *Indian Towing Co.,* 350 U.S. at 69-70; *U.S. v. Muniz*, 374 U.S. 150, 159–60, 165–66 (1963). Particularly in the immigration context, courts allow FTCA claims to proceed even though actions of immigration officers are uniquely governmental. *See, e.g., Xue Lu*, 621 F.3d at 947-50 (allowing plaintiffs' IIED claim to proceed where asylum officer conditioned outcomes in plaintiffs' immigration proceedings on satisfaction of demands for money and sexual favors). This District has rejected Defendant's exact argument concerning uniquely governmental functions twice before, *see A.P.F.*, 492 F. Supp. 3d at 995; *C.M.*, 2020 WL 1698191, at *2, and it should do so again.

Moreover, Defendant inaccurately characterizes "Plaintiff[s'] alleged harms" as "stem[ming] from the federal government's decision to enforce federal immigration laws . . . ." Mot. at 22. Plaintiffs' claims arise from Defendant's malicious, reckless, and

unconstitutional administration of the family separation policy. Defendant's tortious conduct is the forcible and continued separation of parents and children. Because a private individual is subject to liability for such conduct, Defendant is too. Nevertheless, even if the Plaintiffs' harms were the result of Defendant's enforcement of criminal and immigration laws—which they are not—Defendant's conduct in the Plaintiffs' separation may still be analogized to tortious conduct by private individuals even where Defendant's actions are purportedly related to a "uniquely governmental" function. *See, e.g., Sauceda v. U.S.,* No. 07-CV-2267, 2009 WL 3756703, at \*4 (D. Ariz. Nov. 5, 2009) (finding CBP's conduct leading to an arrest analogous to the use of unreasonable force by a private person effecting a citizen's arrest, and finding that "Arizona law imposes a duty on every person 'to avoid creating situations which pose an unreasonable risk of harm to others'") (quoting *Ontiveros v. Borak,* 136 Ariz. 500, 509 (1983)).

The cases Defendant cites do not support a different conclusion. Those inapposite cases all deal with adjudication of immigration petitions, which do not lend support here. Plaintiffs do not challenge adjudication of immigration status. Further, Defendant's cases involve quasi-adjudicative actions, which—unlike the Defendant's actions here—private persons cannot engage in. *Elgamal v. U.S.*, No. 13-00967, 2015 WL 13648070, at \*3 (D. Ariz. July 8, 2015) and *Elgamal v. Bernacke,* 714 F. App'x 741, 742 (9th Cir. 2018) (denial of petition for adjustment of immigration status to lawful permanent residence); *Bhuiyan v. U.S.*, 772 F. App'x 564, 564-65 (9th Cir. 2019) (classification of immigration status under the laws of Vermont and the Northern Marianas Islands).[7]

---

[7] Defendant's final argument concerning the private person analogue attacks this District's decisions in *C.M.* and *A.P.F.* In doing so, Defendant itself recognizes that a private person analogue has been found multiple times for nearly identical, family separation-FTCA claims. It only argues that the courts in *C.M.* and *A.P.F.* improperly relied on *Estate of Smith v. Shartle*, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020). Mot. at 22. However, *Shartle* is sufficiently analogous as federal immigrations officials, like nursing facility employees in *Shartle*, are responsible for the care and custody of those

(continued…)

1    Accordingly, the Court has subject-matter jurisdiction over Plaintiffs' causes of

2    action since Defendant has failed to demonstrate that an exception applies. *See e.g.,*

3    *A.P.F.*, 492 F. Supp. 3d at 995.

4    **IV. Plaintiffs Are Not Seeking to Hold the United States, or Any Agency, Directly**
     **Liable Under The FTCA.**

5

6    Last, Defendant claims that Plaintiffs "cannot assert 'systemic' claims or seek to

7    hold the United States directly liable under the FTCA but must instead allege tortious

8    conduct by individual federal employees, acting within the scope of their employment,

9    for whom the United States has assumed liability for under the FTCA." Mot. at 23.

10   Contrary to Defendant's position, Plaintiffs are not seeking to hold the United States

11   directly liable, and have, in fact, alleged plausible allegations regarding the tortious

12   conduct of individual federal employees.

13   To support this novel legal theory, Defendant relies solely on *Lee v. U.S.*, CV 19-

14   08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) a case pending on

15   appeal in the 9th Circuit. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz.

16   Sept. 18, 2020). The court in *Lee* first notes that the plaintiff's claim against the

17   Government is "indeed unclear" but that the FTCA does not permit "agencies of the

18   Government, such as the BIA, to be sued." *Id.* at 5. The court went on to find that

19   "[a]lthough Plaintiff may bring claims against the Government based on the alleged

20   negligence of its employees under the FTCA, the allegations in Count One are also too

21   vague and conclusory as to the alleged 'negligent or wrongful act or omission of any

22   employee' to state such a claim." *Id.*

23

24   they oversee, and both owe "at least a minimal level of care." *C.M.*, 2020 WL 1698191,
     at *2. Additionally, the *C.M.* and *A.P.F.* courts rely on additional decisions, not just

25   *Shartle*, in reaching the appropriate determination that private analogues exist. *See*

26   *Martinez*, 2018 WL 335962; *Bickler*, 2010 WL 229285. And finally, even if *Shartle* is
     not sufficiently analogous—which it is—the Plaintiffs have still sufficiently pled that a

27   private person analogue exists in order to defeat this argument in Defendant's motion to

28   dismiss.

- 22 -

*Lee v. U.S., CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020)* is inapplicable. Here, despite Defendant's attempt to mischaracterize Plaintiffs' Complaint as "attribut[ing] the alleged tortious conduct to the government as a whole," Mot. at 23, and unlike the "vague and conclusory" allegations found in *Lee*, Plaintiffs identify and describe in detail specific federal employees, and the actions of those federal employees, who were responsible for the forcible and unconstitutional separation of Plaintiffs here. *See* Compl. ¶¶ 27-30 (actions taken by government employees), 34, 36-37, 39, 42, 46, 48-49, 54-59, 64-65, 69, 73-82, 84-85, 90-92, 97.[8]

To the extent Defendant is protesting the Complaint's references to "the United States government," Mot. at 23, there is no legal authority supporting the proposition that a complaint asserting an FTCA claim should be dismissed because allegations in the complaint reference the Government. Such a rule would make little sense given that the FTCA "provides that the United States is the sole party which may be sued for personal injuries arising out of the negligence of its employees." *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984); *see also García-Feliciano v. U.S.*, No. CIV. 12-1959 (SCC), 2014 WL 1653143, at *3 (D.P.R. Apr. 23, 2014) (The FTCA requires "plaintiff [to] sue[] the United States itself.").

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction.

---

[8] Additionally, there a host of circumstances in which plaintiffs are unable to identify by name or title those for which they wish to sue but are nevertheless entitled to do so under the FTCA. *See, e.g.*, *Alegria v. U.S.*, No. 11-CV-809-TUC-HCE, 2012 WL 12842258, at *6-7 (D. Ariz. Nov. 20, 2012) ("it is plausible that the unidentified correctional staff at the federal prison who were involved in the events at issue were federal employees acting within the scope of their employment."). Defendant's unrealistic argument would otherwise foreclose such plaintiffs' ability to recover.

Respectfully submitted this 10th day of March, 2022.

COPPERSMITH BROCKELMAN PLC

By  s/ *Keith Beauchamp*
    Keith Beauchamp
    D. Andrew Gaona

SOUTHERN POVERTY LAW CENTER

James M. Knoepp*
Norma Ventura*
P.O. Box 1287
Decatur, GA 30031
Telephone: (404) 521-6700
jim.knoepp@splcenter.org
norma.ventura@splcenter.org

COVINGTON & BURLING LLP

Matthew J. Schlesinger*
Jason A. Carey*
Teresa S. Park*
Terra White Fulham*
Kristin M. Cobb*
Patrick Lee*
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5581
mschlesinger@cov.com
jcarey@cov.com
tpark@cov.com
tfulham@cov.com
kcobb@cov.com
plee@cov.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Served by ECF this 10th day of March, 2022, upon:


Gary M. Restaino
United States Attorney
District of Arizona

Michael A. Ambri
Assistant U.S. Attorney
United States Courthouse
405 W. Congress St., Suite 4800
Tucson, AZ 8570