GARY M. RESTAINO
United States Attorney
District of Arizona
MICHAEL A. AMBRI
Assistant U.S. Attorney
State Bar No. 021653
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7449
Email: michael.ambri@usdoj.gov
Attorneys for Defendant United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| E.S.M., on his own behalf and on behalf of his minor child, H.S.S., <br><br> Plaintiff, <br><br> vs. <br><br> United States of America, <br><br> Defendant. | CV-21-00029-TUS-JAS <br><br> **REPLY SUPPORTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Defendant United States of America submits this reply in support of its motion to dismiss this action for lack of subject matter jurisdiction (Doc. 32). Congress has not waived sovereign immunity for the types of claims asserted in this action, and those claims are jurisdictionally barred.

Plaintiffs rely on Judge Bolton's decisions in *A.P.F. v United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020) and *C.M. v. United States*, No. 2:19-cv-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. March 30, 2020), and on the decision in *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. April 27, 2021), in arguing that the Court should reject the Government's arguments supporting the motion to dismiss.[1] This Court is not bound by those decisions. *See Camreta v. Greene,* 563 U.S. 692, 709 n.7

---

[1] Judge Hinderaker recently denied the government's motion to dismiss FTCA claims in *A.I.I.L. v. Jefferson Beauregard Sessions, et al.,* No. 4:19-cv-00481-TUC-JCH, (March 31, 2022) (Doc. 77), citing to *A.P.F. and C.M.*

(2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *Skinner v. Tuscan Inc.,* No. CV-18-00319-TUC-RCC, 2020 WL 5946898, at *13 (D. Ariz. Oct. 7, 2020) ("District court decisions cannot be treated as authoritative on issues of law. … Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by another district judge of similar contentions. … Where a second judge believes that a different result may obtain, independent analysis is appropriate.") (quoting *In re Walk v. Thurman,* No. 2:12-CV-00511 BSJ, 2012 WL 3292934, at *7 (D. Utah Aug. 10, 2012)).  Defendant respectfully submits that the better reading of the law aligns with the decision of Judge Alvarez in *Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020), which found that decisions by DHS that resulted in the separation of family members fall within the discretionary function exception ("DFE") to the Federal Tort Claims Act.

**A.  Plaintiffs' Claims Are Barred by the Discretionary Function Exception.**

**1.  Defendant Satisfies the First Prong of the DFE Test.**

Plaintiffs allege that after illegally crossing the U.S.-Mexico border between ports of entry into Arizona in May 2018, ESM and his minor son, HSS, were separated when ESM was designated for prosecution and detained in secure adult detention facilities. While Plaintiffs attempt to reframe these allegations to avoid application of the DFE, as to the conduct pled in the Complaint, the Government maintained discretion to act at all relevant times from the Plaintiffs' entry across the United States border through initial detention, separation, and continued detention.  Plaintiffs' Opposition fails to rebut this discretion by demonstrating that any mandatory policy removes this discretion.

**i.  Plaintiffs Do Not Rebut that the Government's Decisions on Detention and Separation Involved Discretionary Judgments.**

Plaintiffs have not shown that Government officials lacked discretion on the key decisions at issue.  Further, Plaintiffs have not done what is required to overcome the DFE:

identify (1) a statute, regulation, or policy setting forth a course of conduct that is both mandatory and specific, and (2) conduct that violates this mandatory and specific statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

Plaintiffs do not refute that the Government possesses the express statutory authority to detain noncitizens after they illegally enter the country (*see* 8 U.S.C. §§ 1225, 1226(a)), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). These decisions indisputably involve discretion. *See Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (recognizing that in making decisions about investigation and detention, "DHS officers must make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability").

Plaintiffs also do not contest that the Government had the discretion to house ESM in a secure adult immigration detention facility. *See* 8 U.S.C. § 1231(g)(1) (Government has authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal"); *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary of Homeland Security]."). Nor do Plaintiffs contest that the Government had the discretion to prosecute ESM for illegal entry in violation of 8 U.S.C. § 1325(a)(1), and thus detain him for criminal proceedings.

Plaintiffs do not rebut the Government's discretion in making prosecutorial and detention decisions about noncitizens who violated the law when they crossed the border between ports of entry. Decisions concerning prosecution and detention are quintessential discretionary policy decisions subject to the DFE. *Cf. Peña Arita*, 470 F. Supp. 3d at 686-87 (holding that the Zero-Tolerance policy provided for "clearly protected discretionary decisions" that resulted in family separations and that its use of the phrase "to the extent practicable" also indicated "essentially discretionary judgment"). Moreover, the Flores Agreement – which Plaintiffs do not address in their Opposition – does not require release of an adult parent, compel release of a child to a parent that remains in custody, mandate

that parents be housed with a child, or prescribe that parents are entitled to be housed with their children in immigration detention. *Flores v. Lynch*, 828 F.3d 898, 906, 908 (9th Cir. 2016); *see also United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 WL 315759, at *9, *14-15 (W.D. Tex. Jan. 5, 2018). Further, the Department of Health and Human Services Office of Refugee Resettlement ("ORR"), which is statutorily charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status" (6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C)), utilizes its discretion to place unaccompanied children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Plaintiffs challenge none of the Government's discretionary decision-making under these provisions.

        **ii.**     **Plaintiffs Cannot Circumvent the DFE By Simply Alleging a Constitutional Violation.**

Plaintiffs argue that alleged constitutional violations categorically preclude application of the DFE. However, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct. Instead, a plaintiff must show that the Government official's discretion was limited by a *specific, clearly established* directive, accompanied by plausible assertions that the specific directive was violated. The discretion element is met unless "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Sabow v. United States*, 93 U.S. 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536 (1988)); *see also Kelly v. United States,* 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy … does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior,* 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of action," the agency's actions "could be no other way than by the exercise of discretion"). Plaintiffs have not shown a specific, clearly established directive and that such a directive was violated.

In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court recognized that immunity for discretionary acts would not be vitiated simply because alleged conduct

might later be held unconstitutional. *Id*. at 506-07 (acknowledging need to protect officials exercising discretion subject to "clearly established constitutional limits"). In *Butz*, the Supreme Court held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. *Id*. at 507. The Court explained that were it otherwise, as relevant here, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id*. at 505. *Butz* and subsequent decisions leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE.

Since *Butz*, the Supreme Court has expressly held that Government officials who exercise discretionary functions are, under certain circumstances, entitled to qualified immunity in damages suits for violating the Constitution while exercising their discretion. In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Court summarized this immunity as striking a balance between two competing interests and, ultimately, turning on the "clearly established law" at the time the official actions were taken. *Id*. at 1866 (citations omitted). Thus, the Supreme Court has long recognized that conduct may be "discretionary" even if it later is determined to have violated the Constitution.

Nevertheless, Plaintiffs' Opposition incorrectly asserts that the "clearly established" standard does not apply to FTCA suits. To the contrary, several courts have used the "clearly established" standard when assessing whether the FTCA's discretionary function exception is applicable. For example, in *Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019), the Third Circuit concluded that the defendant CBP officers were entitled to qualified immunity with respect to the plaintiffs' *Bivens* claims because, even if their search of the plaintiffs' cruise ship cabin had violated the Fourth Amendment, the plaintiffs' right to be free from such a search was not "clearly established" as of the date the search was executed. *See id.* at 362-63. Having concluded that the officers did not violate the plaintiffs' clearly established rights under the Fourth Amendment, the Court went on to hold that the DFE barred plaintiffs' FTCA claims. *See id.* at 364 ("Because …

the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE.). Similarly, in *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994), the district court concluded that the DFE barred the plaintiff's FTCA claims even though he alleged that the actions of federal agents violated the Fourth Amendment. *See id.* at 593 ("[T]he statutory or constitutional mandate that eliminates discretion must be specific and intelligible so that the officer knows or should know he loses discretion when the particular circumstances arise which the mandate controls."); *id.* n.15 ("This requirement is not unlike the *Harlow* criteria for qualified immunity in constitutional tort cases, *i.e.*, that the officers must violate a clearly established constitutional right."); *see also Garza v. United States,* 161 F. App'x 341, 343 (5th Cir. 2005) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable"); *Bryan v. United States,* 913 F.3d 356 (3d Cir. 2019) (holding FTCA claim failed where "CBP officers did not violate clearly established constitutional rights"); *Ahern v. United States,* 2017 WL 2215633, *10 (S.D. Tex. May 19, 2017) (holding "rights afforded to Plaintiff under the Fifth Amendment … fail to define a set course of conduct … would be considered to be non-discretionary"); *Champion v. United States,* 2010 WL 11463694, *1 (W.D. La. Oct. 28, 2010) (holding Eighth Amendment not "specific enough … to prescribe a non-discretionary course of conduct [and] render the discretionary function exception inapplicable"); *Xiaoxing Xi v. Haugen,* 2021 WL 1224164, *29 (E.D. Pa. Apr. 1, 2021) (dismissing under DFE because constitutional right was not clearly established); *Fabian v. Dunn,* 2009 WL 2567866, *8 (W.D. Tex. Aug. 14, 2009) (dismissing under DFE because Fifth Amendment, Flores agreement and state law did not supply a "specific course of action Defendants were required to take (other than a general requirement that whatever action they take not violate the Constitution or other federal or state law)").

Citing district court decisions, Plaintiffs assert that a likelihood of success on the merits of a constitutional theory is sufficient to negate the DFE's preservation of sovereign immunity (Opposition at 7-8). Plaintiffs ignore whether there was a specific, clearly

1 established constitutional mandate in the particular context, in this case separation of
2 parents and children apprehended after crossing the border between ports of entry in May
3 2018. First, decisions of district judges do not demonstrate that a right is "clearly
4 established." *See Camreta*, 563 U.S. at 708 n.7; *see also Sharp v. Cty. of Orange,* 871 F.3d
5 901, 911 (9th Cir. 2017). Second, the decisions Plaintiffs cite were rendered *after* the
6 occurrence of the conduct that forms the basis for Plaintiffs' claims, and are therefore
7 irrelevant to the analysis of whether the rights at issue were "clearly established."

8 The Ninth Circuit has reserved the question of what level of specificity is necessary
9 before a constitutional provision will preclude the exercise of discretion by a Government
10 official. *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (expressly
11 declining to decide "the level of specificity with which a constitutional proscription must
12 be articulated in order to remove the discretion of the actor"). In *Fazaga v. FBI*, 965 F.3d
13 1015 (9th Cir. 2020), the Court suggested that the same level of specificity is required
14 regardless whether a federal constitutional or statutory directive is at issue. *Id*. at 1065
15 (deferring issue of the DFE's applicability to district court, which must determine whether
16 "any federal constitutional or statutory directives" specifically prescribed a
17 nondiscretionary course of action so that "the FTCA claims may be able to proceed").

18 Plaintiffs rely on *Galvin v. Hay*, 374 F.3d 945 (9th Cir. 2004), to support their
19 argument that the DFE does not apply where plaintiffs allege the Government violated their
20 constitutional rights, even if the relevant constitutional rights were not clearly established
21 at the time of the alleged conduct. In *Galvin*, the plaintiffs alleged constitutional torts under
22 *Bivens* and false arrest under the FTCA. 374 F.3d at 743. Although the court in *Galvin*
23 stated that the DFE did not apply to one example of unconstitutional conduct, which the
24 court elsewhere found was not clearly established, the court did so without any analysis of
25 the proper standard for that conduct – and the court then dismissed the FTCA claims on
26 different grounds. 374 F.3d at 758. The court simply quoted from *Nurse* for the general
27 proposition that "[t]he Constitution can limit the discretion of federal officials such that
28 FTCA's discretionary function will not apply" and from *United States Fid. & Guar. Co. v.*

*United States*, 837 F.2d 116, 120 (3d Cir. 1988), for the general premise that "[f]ederal officials do not possess discretion to violate constitutional rights." 374 F.3d at 758. Notably, however, for the second discrete constitutional violation at issue in that case – the denial of a march permit – the court applied the correct standard, upholding dismissal of plaintiffs' FTCA claim because "the defendants' permit denial was not a violation of *clearly established law*, the officers 'had reasonable cause to believe the arrest was lawful.' Cal. Pen. Code § 847(b)(1)." *Id.* at 758 (emphasis added); *see also Xue Lu v. Powell,* 621 F.3d 944, 950 (9th Cir. 2010) (citing *Nurse* in affirming dismissal of FTCA claim where plaintiffs failed to "point[] to any specific duty under the Fifth Amendment or any specific policy to support a claim of unconstitutional policymaking").

Plaintiffs rely on the district court's decision *Jacinto-Castanon de Nolasco v. U.S. Immigration and Customs Enforcement,* 319 F. Supp 3d 491 (D. D.C. 2018). That case does not speak to these issues. The case involved a constitutional claim for *injunctive relief,* conferring jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 702. 319 F. Supp 3d at 498. There was no FTCA claim, and no issue or decision concerning the DFE.

In all events, any argument that constitutional violations negate the DFE is inapplicable to the negligence claim. "Mere negligence does not amount to a constitutional deprivation." *Campbell v. Chaves,* 402 F. Supp. 2d 1101, 1102 (D. Ariz. 2005) (citing *Daniels v. Williams,* 474 U.S. 327, 331-32 (1986)); *see also Gomez v. Arizona*, No. CV-16-04228, 2017 WL 5517449, *4 n.1 (D. Ariz. Nov. 17, 2017) (rejecting due process claim because "[m]ere negligence is insufficient – 'the Constitution does not guarantee due care. …'") (quoting *Sacramento County v. Lewis*, 523 U.S. 833, 848-49 (1998)).

   **2.   Defendant Satisfies the Second Prong of the DFE Test Because the Decision to Detain Plaintiffs Separately Was Susceptible to Policy Considerations.**

Plaintiffs suggest that there must be a link between their separations and a specific policy objective. But, as discussed in the Motion and reconfirmed recently by the Ninth

Circuit in *Lam v. United States*, 979 F.3d 665 (9th Cir. 2020), the test is whether the Government's actions "were *susceptible* to policy analysis." *Id.* at 674-75 (emphasis in original); *see also GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) ("The decision need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis.") (emphasis in original)); *Doe v. Holy See,* 557 F.3d 1066, 1085 (9th Cir. 2009) ("failure to present any evidence that [government's] actions were actually based on policy considerations is not relevant to whether the discretionary function exception applies.") Plaintiffs do not address this critical distinction.

Plaintiffs dismiss the policy considerations relating to prosecution and detention of noncitizens illegally crossing the border, framing the matter as a "family separation policy." But the separation followed from the Government's discretionary decisions to (a) refer ESM for prosecution for unlawful entry rendering him unavailable to provide care for HSS, thus making HSS an unaccompanied child; and (b) detain ESM in secure adult immigration detention, where HSS could not be held. The Government's decisions regarding whether to prosecute noncitizens for violations of criminal immigration statutes and where to detain noncitizens pending immigration proceedings are inextricably linked with the separation of the Plaintiffs. Those decisions are quintessential discretionary judgments susceptible to policy considerations – as, of course, are the decisions of this Administration reversing those decisions. *See Peña Arita*, 470 F. Supp. 3d at 686-87 (implementation of policies resulting in separations are discretionary conduct grounded in social, economic, and political policy that courts cannot second-guess).

Plaintiffs allege that Defendant "failed to prepare, monitor, and supervise federal employees," and cite a failure to reunify Plaintiffs after ESM was sentenced to time-served. However, a disagreement over the propriety of Zero Tolerance prosecutions and immigration detention decisions – and how such decisions were executed – do not negate the discretion and policy considerations inherent in those decisions. Again, Plaintiffs cite no specific, clearly established mandate pertaining to preparation, monitoring, supervision or execution– including with respect to UAC designation and execution – the violation of

which would preclude application of the DFE. These activities are part and parcel of discretionary, policy-based prosecution and detention decisions, and claims concerning negligence or wrongdoing in the execution of such decisions are barred by the DFE, "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see, e.g., Holy See,* 557 F.3d at 1083-84 (affirming dismissal of negligent hiring, supervision and warning claims under DFE); *Nurse,* 226 F.3d at 1001 (holding that claims of negligent and reckless employment, supervision and training "fall squarely within the discretionary function exception"); *Gaubert,* 499 U.S. at 325 ("Day-to-day management … requires judgment as to which of a range of permissible courses is the wisest."); *Garcia v. United States,* No. 3:09-CV-08033 JWS, 2011 WL 285860, at *9 (D. Ariz. Jan. 27, 2011) (dismissing negligent supervision and training claims under DFE; "The Ninth Circuit has held that the supervision and training of employees are discretionary acts, which fall squarely within the discretionary function exception.").

    **3.    Plaintiffs' Allegations Concerning Conditions of Confinement Should be Dismissed for Lack of Jurisdiction.**

Plaintiffs characterize their confinement allegations as "facts that show the ways in which the harm of family separation was compounded," arguing that they are "not standalone claims" subject to the DFE. Contrary to the characterization in the response, the matters are pled as independent grounds for liability under the legal claims pled in the Complaint.[2] Courts have repeatedly held that claims based on acts or omissions relating to

---

[2] *See, e.g.,* Complaint, Doc. 1 at ¶ 169 (Count One, IIED) (Defendant … intended to cause, and did cause, Plaintiffs to suffer severe emotional distress by, *inter alia,* failing to develop and use a system for tracking the existence of the parent-child relationship, withholding Eliot from any information about his child's location or welfare … not allowing Eliot and Hector to communicate with each other or severely limiting such opportunities … not giving any indication that Eliot and Hector would ever be reunited"); *id.* at ¶ 170 (Count One, IIED) ("Defendant … further intended to cause, and did cause, Plaintiffs to suffer severe emotional distress by subjecting Plaintiffs to inhumane detention conditions prior to their separation"); *id.* at ¶ 180 (Count Two, Negligence) ("Defendant … violated those duties by, *inter alia,* failing to develop and use a system for tracking … withholding from Eliot any information about Hector's location or welfare for weeks …

conditions of confinement are barred by the DFE because they involve discretionary decisions susceptible to policy considerations. *See* Doc. 35 at 16-17 (collecting cases).

In particular, the amount of information provided to ESM and his ability to communicate with HSS by telephone are the result of the Government's discretionary decision to confine him in adult immigration detention facilities. The Government's decisions concerning how much and when to furnish information to detainees, as well as when to permit phone use, are likewise discretionary decisions susceptible to policy considerations, and, thus fall within the DFE. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests") (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim."). Plaintiffs do not contest that these claims are subject to the DFE. Plaintiffs should not be allowed to proceed on any claims for which jurisdiction is lacking.

**B.  Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.**

At the same time Plaintiffs argue that the Government was not executing a statute or regulation when it separated them, they acknowledge that the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), required the Government to transfer HSS to ORR custody within 72 hours after determining that he was

---

severely limiting Plaintiffs' ability to communicate with each other … not giving any indication that the Plaintiffs would ever be reunited"); *id.* at ¶ 181 (Count Two, Negligence) ("Defendant … violated those duties by subjecting Plaintiffs to inhumane detention conditions prior to their separation"); *id.* at ¶ 182 (Count Two, Negligence) ("Defendant … violated those duties by failing to plan for or secure resources to accommodate the increase in children designated as UACs … failing to track families, failing to account for all children separated from their parents, and failing to craft any type of reunification plan. …"); *id.* at ¶ 186 (Count Three, Loss of Child's Consortium) (incorporating prior allegations of the Complaint).

"unaccompanied." Their argument is that HSS should not have been a UAC because it turned out that ESM was not taken to criminal custody. The argument should be rejected.

The statutory definition of UAC is a broad one that encompasses circumstances when parents are physically present in the United States but not "available to provide care and physical custody" of their children. U.S.C. § 279(g)(2); *D.B. v. Cardall,* 826 F.3d 721, 734 (4th Cir. 2016). Moreover, the determination that HSS was "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016).

Here, ESM was amenable to prosecution, was prosecuted, and was housed in adult immigration detention, making him unavailable to provide care and physical custody of HSS. In this circumstance, the DFE applies to the determination that HSS should be deemed unaccompanied and transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision was covered by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data."). Once the discretionary decision was made that HSS was "unaccompanied," the TVPRA required that he be transferred to the care and physical custody of ORR. *See also Alvarez-Portillo v. United States,* 2005 WL 2898024, *3 (W.D. Mo. Nov. 1, 2005) ("Absent an allegation that the employees deviated from the requirements of the policy, regulation or statute, it cannot be said that they acted with anything other than due care.")

**C.   Plaintiffs' Claims Are Not Actionable Since There Is No Private Person Analogue.**

Plaintiffs' claims also fail because the governmental conduct that Plaintiffs challenge has no private analogue. Defendant does not argue, as Plaintiffs suggest, that the conduct at issue is "uniquely governmental." Rather, there is no private analogue because Plaintiffs' claims arise out of federal statutory authority that only the federal government possesses. *See* Mot. at 21-22. This is especially true where, as here, the statutory authority being exercised pertains to enforcement of federal immigration laws – namely, those relating to whether and where to detain noncitizens pending immigration proceedings. *See Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."). Plaintiffs do not dispute that ESM was lawfully held in secure adult immigration detention pending his immigration proceedings. Plaintiffs' claims are essentially a challenge to *where* and *with whom* deportable noncitizens are detained. Such decisions are made pursuant to federal statutory authority and are in the sole province of the federal government; there is no private person counterpart. Mot. at 21-22.

The cases cited by Plaintiffs to suggest that Arizona law provides a private analogue to the conduct at issue here do not support Plaintiffs' argument. None of those cases involved a government actor exercising statutory authority to separate a deportable noncitizen parent from her child or the type of tortious conduct that Plaintiffs challenge in this case. *See Pankratz v. Willis,* 744 P. 2d 1182, 1184 (Ariz. Ct. App. 1987) (plaintiff-father initiating suit relating to ex-spouse disappearing with their child); *Martinez v. United States,* 2018 WL 3359562, *10-12 (D. Ariz. July 10, 2018) (allowing claim relating to agents' interrogation methods); *Dobek v. Wal-Mart Stores, Inc.,* No. CIV 03-297-TUC-FRZ, 2007 WL 2069832, at *4 (D. Ariz. July 17, 2007) (recognizing loss of consortium claims for parents and children but providing no facts about the underlying claims); *Est. of Smith v. Shartle,* 2020 WL 1158552, *2 (D. Ariz. Mar. 10, 2020) (claim relating BOP

employee's failure to protect inmate from a known danger, as opposed to separation under federal law and policy); *Bickler v. Senior Lifestyle Corp.,* No. 09-cv-00726, 2010 WL 2292985 (D. Ariz. June 8, 2010) (recognizing loss of consortium claim for children of parent injured in fall at private nursing facility).  The cases Plaintiffs cite in arguing against a "uniquely government function" analysis – which is not in issue – similarly do not support a private person analogue here.  *See Indian Towing Co. v. United States,* 350 U.S. 61, 69-70 (1955) (ordinary negligence claim over failure to maintain a lighthouse); *Xue Lu,* 621 F.3d 947-50 (seeking money and sexual favors in violation of statutory duties).

Here, Plaintiffs allege that Government officials tortiously devised a separation policy.  But Plaintiffs have not identified any local law or otherwise alleged facts to support the notion that private persons may be held liable in devising, promulgating, or executing federal law and policy.  Any equivalence between local school officials, parents, caregivers or other private individuals who may have a general or duty of care or special relationship duty of care under local law collapses when applied to the specific conduct alleged here.

**D.   Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims.**

Plaintiffs' allegations concern purportedly unconstitutional actions by the "the government" writ large, not actions by individual Government employees.  *See* Motion at 22-23 (providing "government" references throughout the Complaint).  In response, Plaintiff points out instances where "federal officials" or "officials" or the like are used instead of "government," and small handful of names or titles largely in the context of making announcements or statements but not for the key activities alleged to give rise to liability.  "Under well-established law, the United States has not waived its sovereign immunity for constitutional tort claims (*F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994)) and, under the principles of *Lee* and *Adams*, Plaintiffs' allegations are too vague and conclusory to hold Defendant liable under the FTCA for the actions of any individual federal employees.  *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6-7 (D. Ariz. Sept. 18, 2020); *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005).

**E.     Conclusion.**

For the foregoing reasons and those in the motion, Defendant requests that the Court dismiss Plaintiffs' Complaint.

RESPECTFULLY SUBMITTED this 6th day of April, 2022.

                                      GARY M. RESTAINO
                                      United States Attorney
                                      District of Arizona

                                      */s/ Michael A. Ambri*
                                      MICHAEL A. AMBRI
                                      Assistant U.S. Attorney
                                      Attorneys for Defendant United States

Served by ECF this 6th day of April, 2022, upon:

Keith Beauchamp
D. Andrew Gaona
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004

Norma Ventura
James M. Kneopp
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031

Paul Chavez
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL  33137

Matthew Schlesinger
Jason Carey
Teresa Park
Terra White Fulham
COVINGTON & BURLING LLP
One City Center, 850 Tenth Street, NW
Washington, DC  20001-4956

*/s/ M. Ambri*